1
2
3
4
5
6
7

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

8  UNITED STATES OF AMERICA,            )
                                        )
9              Plaintiff,               )        Case No. 2:13-cr-029-APG-GWF
                                        )
10  vs.                                 )        **FINDINGS &**
                                        )        **RECOMMENDATIONS**
11  DAVID ALLAN GARRETSON,              )
                                        )        **Motion to Dismiss - #50**
12             Defendants.              )
   ─────────────────────────────────── )

14          This matter is before the Court on Defendant David Allen Garretson's Motion to Dismiss

15  Count Six of the Indictment for Failure to State an Offense and, in the Alternative, Motion to

16  Dismiss The Count As Violative of the Second Amendment as Applied (#50), filed on April 8,

17  2013.  The Government filed its Opposition to Defendant's Motion to Dismiss Count Six of the

18  Indictment (#56) on April 25, 2013.  Defendant filed his Reply to the Government's Opposition to

19  the Motion (#63) on May 1, 2013.

20                          **FACTUAL BACKGROUND**

21          On November 5, 2012, officers of the Las Vegas Metropolitan Police Department

22  (LVMPD) executed a warrant to search Defendant Garretson's property, including his residence,

23  for evidence relating to the possession, production and distribution of marijuana.  During the

24  execution of the warrant, the officers found and seized numerous firearms that were located in the

25  master bedroom of Defendant Garretson's house.  The officers also found an "Extended Order for

26  Protection Against Domestic Violence" (hereinafter "order") that was issued by the District Court,

27  Family Division, Clark County, Nevada, Case No. T12139331T, against David Garretson on March

28  7, 2012 and which was due to expire on March 7, 2013.  *Motion to Dismiss (#50), Exhibit A.*  The

applicant on the order was identified as Ruchelle Stuart.  The order did not describe the nature of

Ms. Stuart's relationship to David Garretson. It did not indicate, for example, whether Ms. Stuart

was Defendant's spouse, former spouse, or present or former girlfriend.

A box below the case caption on the order contained four different notices to the adverse

party, Mr. Garretson.  It also included the following:

> WARNING:   Possession of a firearm or ammunition while this order is in effect
> may constitute a felony under federal law punishable by a fine of up
> to $250,000 and/or a prison sentence of up to ten (10) years.

Below the box and on the first and second pages, the Domestic Violence Protection Order

further stated:

> The court having considered the filings, testimony and evidence
> presented at the hearing, and the court having found that the Adverse
> Party received actual notice of the hearing at which such person had
> an opportunity to participate, and the Adverse Party [was not present]
> . . . and the Court having jurisdiction over the parties and this matter
> pursuant to NRS 33.010 et seq., and it appearing to the satisfaction of
> the Court from specific facts shown that an act of domestic violence
> has occurred and/or you represent a credible threat to the physical
> safety of the above-named Applicant or minor child(ren), the court
> enters an extended order and as a result:
>
> YOU ARE PROHIBITED, either directly or through an agent, from
> threatening, physically injuring, or harassing the above named
> Applicant and/or minor child(ren), and from selling, damaging,
> destroying, giving away, or otherwise disposing of, or tampering
> with, any property owned by the Applicant, or in which Applicant has
> an interest.

Based on the Extended Order for Protection Against Domestic Violence and Defendant

Garretson's alleged possession of firearms, Count Six of the Indictment charges him with the

possession of a firearm in violation of 18 U.S.C. §922(g)(3) and §924(a)(2).   Although the

Indictment identifies the incorrect subsection of §922(g), this is not the basis for the Defendant's

current motion to dismiss.  The correct subsection of the statute upon which Count Six of the

Indictment is based is §922(g)(8) which states as follows:

> It shall be unlawful for any person who is subject to a court order that
> ---
> **(A)** was issued after a hearing of which such person
> received actual notice, and at which such person had an
> opportunity to participate;

2

**(B)** restrains such person from harassing, stalking or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and

**(C)(i)** includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or

**(ii)** by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury[,]

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

"Intimate partner" is defined in 18 U.S.C. §921(a)(32) as follows:

The term "intimate partner" means, with reference to a person, the spouse of the person, a former spouse of the person, an individual who is a parent of a child of the person, and an individual who cohabitates or has cohabitated with the person.

## DISCUSSION

Defendant argues that for an individual to be subject to prosecution under §922(g)(8), the order upon which the charge is based must contain all of the elements set forth in the statute, including that the person in whose favor the order is entered is "an intimate partner" of the Defendant.  Because the order does not expressly identify Ruchelle Stuart as Defendant's intimate partner, he argues that Count Six must be dismissed.  Alternatively, the Defendant argues that the statute, as applied, violates his right to bear arms under the Second Amendment to the United States Constitution.

**1.**   **Whether Count Six of the Indictment Should be Dismissed Because the Underlying Domestic Violence Protective Order Does Not Expressly Identify the Applicant as Defendant's "Intimate Partner."**

In support of his argument that the indictment must be dismissed for its failure to identify Ruchelle Stuart as his intimate partner, Defendant relies on *United States v. Sanchez*, 639 F.3d 1201 (9th Cir. 2011).  In *Sanchez*, the defendant was indicted for violating §922(g)(8).  The indictment was based on a written judgment and conditions of probation for defendant's domestic violence conviction which directed defendant to "violate no laws" and "have no contact with" his

3

former girlfriend.  The written conditions of probation also precluded defendant from initiating

telephone contact, correspondence, personal or third party contact with the victim without prior

written approval of the probation officer and also ordered him to avoid all contact with the victim's

family unless approved by the probation officer.  The defendant moved to dismiss the indictment

on the grounds that "the statute requires the triggering court order to 'by its terms explicitly

prohibit' the use, attempted use, or threatened use of physical force against an intimate partner."

639 F.3d at 1203.  The district court denied the motion and defendant was subsequently convicted

of violating §922(g)(8).

The issue before the court in *Sanchez* concerned §922(g)(8)(C) which requires that the order

(i) include a finding that such person represents a credible threat to the physical safety of such

intimate partner or child, or (ii) that the order by its terms explicitly prohibit the use, attempted use,

or threatened use of physical force against such intimate partner or child that would reasonably be

expected to cause bodily injury.  There was no finding in the judgment or conditions of probation

that Sanchez represented a credible threat to the physical safety of his girlfriend.  Nor did the

documents contain language that expressly prohibited the use, attempted use, or threatened use of

physical force against the defendant's girlfriend.  The court noted that other circuits have reached a

consensus that subsection "(C)(ii) is satisfied by a court order that includes explicit terms similar--

if not identical--in meaning to 'the use of physical force that would reasonably be expected to cause

bodily injury.'" *Sanchez*, 639 F.3d at 1204, citing *United States v. DuBose*, 598 F.3d 726, 730-31

(11th Cir. 2010) (per curiam); *United States v. Coccia*, 446 F.3d 233, 242 (1st Cir. 2006); and

*United States v. Bostic*, 168 F.3d 718, 722 (4th Cir. 1999).  In following the interpretation adopted

by these circuits, the Ninth Circuit looked to the language of the statute and the plain meaning of

the word "explicit."  The court stated:

> Under any of these definitions, for a court order to "by its terms
> explicitly" prohibit the use, threatened use, or attempted use of
> physical force, it must include terms that clearly—without
> implication, vagueness, or ambiguity—prohibit the use, threatened
> use, or attempted use of physical force.  While this does not require
> the court order to track the language of (8)(C)(ii), it must include
> specific terms that clearly—and without implication—prohibit such
> activity. A court order that merely requires "no contact" does not
> explicitly prohibit such activity.

4

1    *Sanchez*, 639 F.3d at 1205.

2         The court also held that this interpretation was consistent with the rule of statutory

3    construction that "language employed in a penal statute is deemed to have been used intentionally."

4    *Id.* citing 5 Sutherland Stats. & Stat. Constr. §59.8.  The court further stated:

5              This reading is also apparent from a reading of (8)(C)(ii) within the
              context of §922(g)(8) as a whole.  Subsection (8)(B) limits the statute
6              to court orders that restrain persons "from harassing, stalking, or
              threatening an intimate partner of such person or child of such
7              intimate partner or person, or engaging in other conduct that would
              place an intimate partner in reasonable fear of bodily injury to the
8              partner or child," and it does not include (8)(C)(ii)'s "by its terms
              explicitly" language.  Context suggests that (8)(C)(i) and (8)(C)(ii)
9              require something more than what (8)(B) requires.  In addition to
              restraining an individual from harassing, stalking, or threatening an
10             intimate partner or engaging in similar conduct, the court order must
              either: (i) include a finding that such person represents a credible
11             threat to the physical safety of the intimate partner or child, or (ii)
              expressly by its terms prohibit the use, attempted use, or threatened
12             use of physical force against the intimate partner or child.

13        *Id.*

14        The *Sanchez* court rejected the government's argument that individuals subject to "no-

15   contact" orders are within the scope of §922(g)(8)(C)(ii) because they "'have presumably been

16   found to present such a threat to victims that an absolute prohibition of any contact is necessary to

17   protect the victims.'" *Id.* at 1206.  The court stated that a court may issue a "no-contact" order for

18   reasons unrelated to safety and therefore such orders do not carry a presumption that the person

19   subject to the order represents a threat of violence to other persons.  *Id.*

20        Defendant argues that the underlying order must also explicitly state that the protected

21   person is an "intimate partner" of the individual against whom the order is entered.  Defendant

22   notes that domestic violence laws in Nevada have broad sweep and can apply to individuals who

23   have committed assaults or batteries against persons who are not their "intimate partners" as

24   defined in §921(a)(32).  *See City of Las Vegas v. Eighth Judicial District Court*, 124 Nev. 540, 188

25   P.3d 55 (Nev. 2008) (holding that a battery against a brother-in-law falls within the definition of

26   domestic violence under NRS §33.018 which defines domestic violence as an assault or battery

27   against a spouse, former spouse or any other person to whom the person is related by blood or

28   marriage and with whom the person actually resides).  The Government does not dispute that in

5

order to prove a violation of 18 U.S.C. §922(g)(8), it must prove that the person for whose protection the underlying order was issued, was the "intimate partner" of the defendant as defined in 18 U.S.C. §921(a)(32).  The Government argues, however, that the underlying order does not have to explicitly identify that person as the defendant's "intimate partner."

In support of its position, the Government relies on *United States v. Hayes*, 555 U.S. 415, 129 S.Ct. 1079 (2009) which involved a conviction under 18 U.S.C. §922(g)(9).  Section 922(g)(9) makes it unlawful for a person to possess a firearm if he or she "has been convicted in any court of a misdemeanor crime of domestic violence."  18 U.S.C. §921(a)(33) defines a "misdemeanor crime of domestic violence" as an offense that (i) is a misdemeanor under Federal, State, or Tribal law and (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent or guardian of the victim.  The defendant in *Hayes* had been convicted of battering his then wife under a West Virginia battery statute.  The state statute did not have as one of its elements a requirement that the defendant be in a "domestic relationship" with the victim.

In *Hayes,* the Supreme Court was required to construe the word "element" as used in 18 U.S.C. §921(a)(33).  The Court first examined how the word "element" was used in the statute and whether the statutory language required that the underlying misdemeanor conviction be based on a statute that was specifically limited to assaults or batteries arising out of a domestic relationship. The Court held that the statutory language was not so limited.  Secondly, the Court relied on "practical considerations."  It noted that at the time 18 U.S.C. §922(g)(9) and 18 U.S.C. §921(a)(33) were enacted, many states did not have statutes that specifically punished assaults or batteries committed upon a spouse or other person in a domestic relationship.  The Court concluded that in enacting §922(g)(9), Congress did not intend to eliminate from the prohibition against possession of firearms, individuals who had committed a misdemeanor crime of assault or battery on a domestic partner, but who were not convicted under a statute that required a domestic relationship as an element of the offense.

6

1    The dissenting opinion by Justice Roberts, joined by Justice Scalia, argued that a fair

2    construction of the statutory language supported the conclusion that the underlying conviction must

3    be based on a statute that includes a domestic relationship as an element of the offense.  Justice

4    Robert also argued that the majority's interpretation would often require courts "to go beyond the

5    fact of conviction and 'engage in an elaborate factfinding process regarding the defendant's prior

6    offens[e], *Taylor v. United States*, 495 U.S. 575, 601, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), to

7    determine whether it happened to involve domestic violence."  *Hayes*, 129 S.Ct. at 1092 (Justice

8    Roberts dissenting).  Justice Roberts argued that the avoidance of such factual inquiries into the

9    underlying convictions was one reason the Court adopted a categorical approach to predicate

10   offenses under the Armed Career Criminal Act, 18 U.S.C. §924(e)(1).  *Id.*

11   Although *Hayes* does not directly apply to §922(g)(8), it is instructive as to how that

12   subsection should be interpreted.  Defendant Garretson also attempts to analogize this case to

13   decisions involving the immigration laws, the enforcement of which, in some instances, depend on

14   how an alien's underlying state court conviction is categorized.  The Supreme Court has adopted a

15   "categorical approach" under which the court looks only to the document(s) of conviction and the

16   elements of the state crime for which the defendant was convicted in determining whether it is the

17   type of crime that supports removal or deportation.  The court does not consider the evidence that

18   was adduced in the underlying state prosecution.  *See Gonzales v. Duenas-Alvarez*, 549 U.S. 183,

19   193, 127 S.Ct. 815, 820-21 (2007).  At least according to the dissent in *United States v. Hayes*,

20   however, the Supreme Court has eschewed the categorical approach in regard to prosecutions under

21   §922(g)(9).  Section 922(g)(8) is not predicated on an underlying criminal conviction.  Rather, it is

22   predicated on the existence of a certain type of order that was in force at the time the defendant was

23   in possession of a firearm.  Defendant's analogy to the categorical approach used in immigration

24   cases does not require the conclusion that the underlying order expressly identify the protected

25   person as an intimate partner of the defendant.

26   The holding in *Sanchez* is limited to §922(g)(8)(C)(ii) which states that the order must "by

27   its terms explicitly" prohibit the use, threatened use, or attempted use of physical force.  Section

28   922(g)(8)(B), however, does not require that the person for whose protection the order has been

7

issued, be explicitly identified in the order as "an intimate partner" of the defendant. The Government, however, must prove at trial that Ruchelle Stuart was Defendant's intimate partner as defined in §921(a)(32). Count Six of the Indictment is therefore not subject to dismissal on the grounds that the underlying order does not comport with the requirements of §922(g)(8).

### 2. Whether Section 922(g)(8) as Applied To Defendant Violates the Second Amendment.

Defendant Garretson argues in the alternative that §922(g)(8), as applied to him, violates the Second Amendment. In *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783 (2008), the Supreme Court held that the Second Amendment protects an individual's right to keep and bear arms. In so holding, the Court stated that the inherent right of self-defense, particularly in the home, is central to the Second Amendment right. *Id.* 128 U.S. at 2817. In *McDonald v. City of Chicago*, ___U.S. ___, 130 S.Ct. 3020 (2010), the Court held that the Second Amendment is applicable to the states through the Fourteenth Amendment. In so holding, the Court again stated that individual self-defense is the central component of the Second Amendment right. In both *Heller* and *McDonald*, the Court declared invalid local ordinances which had the effect of prohibiting the possession of handguns by law abiding individuals. *Heller* stated, however, that the right secured by the Second Amendment is not unlimited and that nothing in the Court's opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms. 128 S.Ct. at 2816-17. The Court also stated that this list of presumptively lawful regulatory measures did not purport to be exhaustive. *Id.* at 2817 n. 26.

Since *Heller* and *McDonald*, the lower federal courts have been called on to decide whether various laws regulating firearms violate the Second Amendment. In deciding these cases, the courts have also been required to determine the appropriate standard of scrutiny to be applied to a particular law. "'[T]he Second Amendment can trigger more than one particular standard of scrutiny,' depending, at least in part, upon 'the type of law challenged and the type of [Second Amendment] restriction at issue.'" *United States v. Reese*, 627 F.3d 792, 801 (10th Cir. 2010),

quoting *United States v. Marzzarella*, 614 F.3d 85, 96-97 (3rd Cir. 2010).  In deciding whether 18 U.S.C. §922(g)(8) violates the Second Amendment, federal courts have applied an intermediate standard of scrutiny.  *United States v. Mahin*, 668 F.3d 119, 123-24 (4th Cir. 2012); *United States v. Bena*, 664 F.3d 1180 (8th Cir. 2011); and *United States v. Reese*, 627 F.3d 792 (10th Cir. 2010).  Intermediate scrutiny requires the government to demonstrate that the statute serves a significant, substantial or important government interest and that the fit between the law and its objective is reasonable, not perfect.  *Mahin*, 668 F.3d at 124; *Marzzarella*, 614 F.3d at 98.  In *United States v. Reese*, the court stated that §922(g)(8), like §922(g)(9), prohibits the possession of firearms by narrow classes of persons who, based on their past behavior, are more likely to engage in domestic violence.  *Id.* 627 F.3d at 802.  In upholding the constitutionality of §922(g)(8), the court held that the statute reasonably furthers the important governmental interest in protecting potential victims of domestic abuse from the increased risk of injury or death posed by firearms.

The courts have also concluded that §922(g)(8) passes Second Amendment muster because it is narrowly limited in scope.  First, as noted in *Mahin*, "§922(g)(8)'s prohibition on firearm possession is temporally limited and therefore 'exceedingly narrow.'"  668 F.3d at 125.  It only applies to the duration of the domestic protection order and is thus usually a temporary burden during a period when the subject of the order is adjudged to pose a particular risk of future abuse.  The order at issue in *Mahin* had a duration of two years.  The order issued against Defendant Garretson had a duration of one year.  Second, §922(g)(8) applies only to persons individually adjudged to pose a future threat of domestic abuse "'after a hearing of which such person received actual notice, and at which such person had an opportunity to participate.'"  *Id.* at 125, quoting statute.  The order in this case recites that Defendant Garretson received actual notice of the hearing and was afforded the opportunity to participate.  Finally, the order must either include a finding that such person represents a credible threat to the physical safety of the intimate partner, or by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against the intimate partner.  *Id.* at 125-6.  The order in this case contained both the finding under (C)(i) and the statement under (C)(ii).

. . .

1    Defendant Garretson raises two challenges to the constitutionality of §922(g)(8) as applied

2    to him.  Both of these challenges are based on the alleged differences between the federal statute

3    and Nevada laws governing protective orders against domestic violence.  First, Defendant

4    Garretson states that "if this court embraces the broad Nevada definition of what constitutes

5    domestic violence it will be broadening the impact of  922(g)(8)."  *Motion to Dismiss (#50), pg. 10.*

6    The indictment in this case does not embrace or rely on the Nevada statute's arguably broader

7    definition of domestic violence or its more expansive definition of the persons who may be

8    protected by such an order.  Count Six of the Indictment recites the elements of §922(g)(8),

9    including that Defendant was restrained by the protective order "from harassing, stalking or

10   threatening an *intimate partner*" and was by the order's terms explicitly prohibited from "the use,

11   attempted use, or threatened use of physical force against such *intimate partner* that would

12   reasonably be expected to cause bodily injury."  *Indictment (#1), pg. 5.*  (Emphasis added).

13   Therefore, in order for Defendant Garretson to be convicted of the charge in Count Six, the

14   Government must prove that Ruchelle Stuart was Defendant's  "intimate partner" as defined in

15   §921(a)(32).  The fact that NRS §33.010 may authorize the issuance of orders for the protection of

16   a broader class of persons is irrelevant to the prosecution of Defendant under §922(g)(8).

17   Defendant's "as applied" challenge to the statute on this basis therefore fails.

18   Defendant's second as applied challenge to §922(g)(8) is based on the fact that "Nevada law

19   provides for specific and separate proceedings and findings regarding whether someone should lose

20   the right to possess a firearm during the pendency of the extended protective order."  *Motion (#50),*

21   *pg. 10.*  NRS §33.031 provides that the court may include in the order a prohibition against the

22   adverse party possessing or having custody or control of any firearm while the order is in effect.  In

23   making such determination, the court must consider, without limitation, whether the adverse party

24   has a documented history of domestic violence, has used or threatened to use a firearm to injure or

25   harass the applicant, a minor child, or any other person, and has used a firearm in the commission

26   or attempted commission of any crime.  NRS. §33.031.2.  The Nevada statute also provides a

27   procedure under which the adverse party is required to surrender or sell any firearms in his

28   possession, custody and control when such a provision is included in the order.  NRS §33.033.  The

1    violation of the firearms prohibition is a gross misdemeanor.  NRS §33.031.4.

2          The fact that the Nevada Legislature has adopted a different and perhaps more restrictive

3    standard for determining when an adverse party should be prohibited from possessing a firearm,

4    and imposes lesser penalties for violation of such a prohibition, does not render §922(g)(8)

5    unconstitutional under the Second Amendment.  Congress has determined that a person should be

6    prohibited from possessing a firearm, that has been shipped or transported in interstate commerce,

7    if an order has been entered against him or her that includes a finding that he or she represents a

8    credible threat to the physical safety of an intimate partner or child, or which by its terms explicitly

9    prohibits the use, attempted use, or threatened use of physical force against such intimate partner or

10   child that would reasonably be expected to cause bodily injury.  The Courts of Appeal, that have

11   examined §922(g)(8), have concluded that it does not violate the Second Amendment because it

12   furthers an important governmental interest and there is a reasonable fit between the law and its

13   objective.[1]

14                                    **CONCLUSION**

15         There is no requirement under 18 U.S.C. §922(g)(8) that the underlying order expressly

16   identify the person for whose protection the order is entered as the intimate partner of the individual

17   against whom the order has been entered.  The Government must, however, prove that Ruchelle

18   Stuart was the Defendant's intimate partner as that term is defined in 18 U.S.C. §921(a)(32).  The

19   constitutionality of 18 U.S.C. §922(g)(8) under the Second Amendment has been upheld by the

20   United States Courts of Appeal that have addressed the issue.   This Court further concludes that

21   the statute, as applied to Defendant Garretson, does not violate the Second Amendment to the

22   United States Constitution.  Accordingly,

23

24         [1]There is no requirement under §922(g)(8) that the underlying order contain an express
25   prohibition against the possession of firearms.  The order in this case, however, did contain an
     express warning that "[p]ossession of a firearm or ammunition while this order is in effect may
26   constitute a felony under federal law punishable by a fine of up to $250,000 and/or a prison
     sentence of up to ten (10) years."  The evidence presented at the evidentiary hearing on May 7,
27   2013 shows that Defendant Garretson was in possession of a copy of the order and was therefore on
28   notice of its terms and of the warning.

11

1

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Defendant David Allen Garretson's Motion to Dismiss Count Six of the Indictment for Failure to State an Offense and, in the Alternative, Motion to Dismiss The Count As Violative of the Second Amendment as Applied (#50) be **denied**.

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 12th day of June, 2013.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge

12